IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR AMMOURI, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ADAPPT HOUSE, INC., et al. | : | NO. 05-3867 |

**MEMORANDUM AND ORDER**

**L. Felipe Restrepo**                                                                                                           **June 12, 2008**
**United States Magistrate Judge**

      In this § 1983 action, Omar Ammouri, a former resident at ADAPPT House (a "halfway house" that contracts with the Pennsylvania Department of Corrections), brings the following claims against ADAPPT House, its director (Defendant Tillman), and three members of its staff (Defendants Conely, Kama, and Hammond): excessive force and civil conspiracy (Counts I and II) against Tillman, Conely, Kama, and Hammond; false arrest, false imprisonment, and malicious prosecution as violations of both the Fourth Amendment of the U.S. Constitution and state tort law (Counts III, IV, V, VII, VIII, IX[1]) against Tillman; and failure to train (Count VI) against ADAPPT House and Tillman.[2] See Amend. Compl. (Doc. No. 61).

---

   [1] The Amended Complaint (Doc. No. 61) numbers Plaintiff's state law claims as Counts IX, X, and XI; the Court assumes that this irregular numbering is a typographical error, and will refer to Plaintiff's counts in their numerical order.

   [2] Plaintiff also asserts a claim for intentional infliction of emotional distress (Count X) against Tillman. See Amend. Compl. Count X. However, Plaintiff withdrew this claim in their response to Defendants' Motion for Summary Judgment. See Pl. Opp. Mot. Summ. J. (Doc No. 83) at 1 n.1. Accordingly, summary judgment is granted to Defendants with regard to Plaintiff's claim for intentional infliction of emotional distress.

Plaintiff claims that he was severely beaten by Tillman while residing at ADAPPT House because he complained that monies from his paychecks, which he deposited into his account at ADAPPT House in compliance with their guidelines, were not in his account as expected. See Ammouri Dep. (Doc. No. 83-3.)  As a result of his complaint, Plaintiff alleges that he was brought to Tillman's office by Conely, Kama, and Hammond, staff members at ADAPPT House, and that Conely, Kama, and Hammond restrained him while Tillman beat him. See id.  Plaintiff further alleges that Tillman falsely stated to the police that Plaintiff beat Tillman, causing Plaintiff to be falsely arrested, imprisoned, and subjected to prosecution. See Amend. Compl. ¶¶ 47-49.

Tillman, Conely, and Kama testified against him at his criminal trial for simple assault and harassment, claiming that Plaintiff assaulted Tillman. See Amend. Compl. ¶¶ 56-58. However, Plaintiff was acquitted of the assault charge by a jury and the harassment charge by the presiding judge. See Compl. ¶¶ 53-54.  Plaintiff alleges that these four Defendants deliberately fabricated their statements to the police and at his trial.[3]

On or about July 27, 2005, Plaintiff initiated this § 1983 action pro se.  See Compl. (Doc. No. 1.)  On or about March 29, 2006, Judge Timothy J. Savage granted Plaintiff's Motion for Appointment of Counsel (Doc. No. 6), and Plaintiff was assigned his present counsel from the Prisoners Civil Rights Panel. See Mar. 29, 2006 Order (Doc No. 34.)  Defendants now move for summary judgment, (see Doc. No. 75); Plaintiff has responded to Defendants' motion, (Doc. No.

---

[3] For an additional recitation of the facts of this case, see this Court's March 30, 2006 Memorandum and Order denying Defendants' Motion to Dismiss the original Complaint. See Ammouri v. County of Berks, et al., 2006 U.S. Dist. LEXIS 30278, at *3 (E.D.Pa. Mar. 30, 2006) (Savage, J.).

83), and Defendants have replied.  (Doc. No. 84.)  On June 4, 2008, this Court heard oral argument on the pending Motion for Summary Judgment.

For the reasons which follow, this Court will grant Defendants' motion with respect to Plaintiff's claim of intentional infliction of emotional distress and with respect to Plaintiff's claims against Defendant Hammond.  The Court will deny the balance of Defendants' motion for summary judgment.

**A.      EXHAUSTION**

As a general rule, plaintiffs proceeding under § 1983 need not exhaust state administrative remedies before filing suit.  See Porter v. Nussle, 534 U.S. 516, 523 (2002); Anderson v. XYZ Corr. Health Serv., Inc., 407 F.3d 674, 676 (4th Cir. 2005).  However, the Prison Litigation Reform Act ("PLRA") reversed that rule as to prison-condition lawsuits.  See 42 U.S.C. § 1997e(a) ("No Action shall be brought with respect to prison conditions under . . . 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")  The PLRA imposes a mandatory requirement that all inmates exhaust all administrative remedies available to them before filing an action challenging prison conditions under federal law.  See Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 919-20 (2007); Porter, 534 U.S. at 524 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.")

Defendants assert that Plaintiff has not exhausted his administrative remedies, and that his claims are thus barred by the PLRA.  See Defs. Mem. Summ. J. at 2-4.  Exhaustion of

administrative remedies is an affirmative defense that must be raised and proven by Defendants. Jones, 549 U.S. 199, 127 S. Ct. 910, 921; Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Harcum v. Shaffer, 2007 U.S. Dist. LEXIS 86089, *12 (E.D. Pa. Nov. 21, 2007).

The facts relevant to exhaustion are as follows: Plaintiff alleges that on September 18, 2003, he was attacked and beaten by ADAPPT House staff. Immediately after the alleged attack, Plaintiff was removed from ADAPPT House to the City of Reading police station and then transferred (it appears) to the Berks County Jail. He was subsequently incarcerated at SCI-Mahanoy.

Plaintiff alleges that he attempted to file a grievance against ADAPPT House while held at the Berks County Jail, but was informed that he could not file a grievance against outside institutions. See Pl. Counterstatement of Undisputed Material Facts ¶ 21 (Doc. No. 83-2). On December 30, 2004, Plaintiff filed an official inmate grievance against ADAPPT House while at SCI-Mahanoy. See Def. Statement of Undisputed Facts (Doc. No. 76), Ex. CC. On January 3, 2005, Plaintiff's grievance was rejected because it "involve[d] matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility." See id. Plaintiff's December 30th grievance was forwarded to the Office of Professional Responsibility ("OPR"), which found his grievance to have no merit. See id., Ex. DD. He did not appeal this decision.

Defendants argue that Plaintiff failed to exhaust his administrative remedies because: (1) Plaintiff was well aware of ADAPPT House's grievance procedures because he had utilized them in the past and acknowledged receipt of the grievance procedure several times[4], and; (2) he did not appeal the OPR's decision that his grievance had no merit. See Def. Mem. of Law in Supp.

---

[4] See Def. Exs. F-H (Doc. Nos. 76-7, 76-8, 76-9).

Mot. Summ. J. (Doc. No. 75) at 2-4.  Therefore, Defendants argue, Plaintiff's claims are barred by the PLRA.  Id.

Plaintiff argues that because he was transferred from ADAPPT immediately after the alleged incident, ADAPPT's grievance procedure was not "available" to him.  See Pl. Opp. To Def.'s Mot. Summ. J. (Doc. No. 83) at 4-6.  Plaintiff asserts that he exhausted such remedies as were available to him at SCI-Mahanoy by filing a grievance against ADAPPT there.  See id.  Further, Plaintiff argues that there is no evidence that there is a procedure by which he could have appealed the OPR's decision.  Id.  Finally, Plaintiff invokes the "law of the case" doctrine,[5] asserting that Judge Savage decided that Ammouri had indeed exhausted his administrative remedies in his denial of Defendants' 12(b)(6) motions.  See id.; see also Doc. No. 35 (Savage, J.).  Therefore, Plaintiff argues, the exhaustion defense has already been decided in Ammouri's favor, and this Court must abide by that prior decision.[6]  See Doc. No. 83 at 6-8.

I find that Defendants have failed to prove the affirmative defense of exhaustion for the following reasons.

First, though Defendants bear the burden of proving that Plaintiff did not exhaust his

---

[5] The "law of the case" doctrine rests on the premise that "the same issue presented a second time in the same case in the same court should lead to the same result." Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir. 1999) (quoting LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).

[6] Plaintiff argues that under the "law of the case doctrine," the issue of whether Plaintiff exhausted his administrative remedies has already been decided in his favor, and may not be relitigated at this later date.  See Pl. Opp. to Defs.' Mot. Summ. J. at 6-8; see also Ammouri v. County of Berks, et al., 2006 U.S. Dist. LEXIS 30278, at *4-5 (E.D. Pa. Mar. 30, 2006); Mar. 25, 2008 Order (Doc. No. 71).  Although Plaintiff raises an important legal question, I need not resolve it in order to decide whether Defendants have met their burden with regard to the affirmative defense of exhaustion.

available administrative remedies, they have provided the Court with minimal explanation or proof regarding the structure of the grievance procedures at ADAPPT House, SCI-Mahanoy (and the Pennsylvania Department of Corrections), and the OPR.  Such facts are material to a finding of whether Plaintiff exhausted his remedies; without knowing the administrative procedures of these various institutions, it is impossible for the Court to judge whether or not Plaintiff exhausted them.  See, e.g., Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002); Lindsay v. Dunleavy, 177 F. Supp. 2d 398, 401-02 (E.D. Pa. 2001).  For example, while Defendants claim that Ammouri failed to appeal the decision of the OPR, they have provided the Court with no information or proof as to whether there was in fact an appellate procedure for such decisions.

Second, Defendants have not shown that ADAPPT House's or the Department of Corrections' administrative remedies were available to Plaintiff.  The PLRA requires exhaustion of "such administrative remedies as are **available**." Jones, 549 U.S. 199, 127 S. Ct. at 922 (quoting 42 U.S.C. § 1997e(a)) (emphasis added).  The availability of administrative remedies to a prisoner is a matter of law.  Ray, 285 F.3d at 291.

The PLRA itself does not define "available remedies;" rather, "'prisoners must complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. 199, 127 S. Ct. at 922-23 (quoting Woodford v. Ngo, 548 U.S. —, —, 126 S. Ct. 2378 (2006)); see also Spruill v. Gillis, 372 F.3d 218, 231(3d Cir. 2004); Harcum, 2007 U.S. Dist. LEXIS, at *13. Compliance with prison grievance procedures "is all that is required by the PLRA to properly exhaust." Harcum, 2007 U.S. Dist. LEXIS, at *13 (quoting Jones, 549 U.S. 199, 127 S. Ct. at 922-23).

For obvious reasons, a determination of availability of administrative remedies intimately depends on what procedures were actually in place for inmates to file grievances; therefore, the aforementioned dearth of information about the details of ADAPPT House's and the Department of Corrections' procedures impedes the Court's ability to determine what grievance procedures were, as a matter of law, available to Plaintiff.  In light the fact that Plaintiff was informed on two separate occasions that he could not file a grievance against ADAPPT House while at Berks County Jail, see Tr. Oral Arg. 6/4/08, or while at SCI-Mahanoy because it involved a matter "that occurred at another facility and should be directed by the inmate to that facility," see Def. Ex. CC, Dept. of Corr. Grievance Rejection Form, it is clear that the fact that Plaintiff was transferred from ADAPPT House immediately after the alleged assault significantly impeded his ability to utilize whatever grievance procedures were in place.[7]

Further, Defendants represent to the Court that ADAPPT House's grievance procedure is identical to that of the Pennsylvania Department of Corrections.  See Tr. Oral Arg., 6/4/08. However, this representation is not clearly supported by the evidence submitted by Defendant. While ADAPPT House's grievance procedure, as laid out in the "ADAPPT Resident Handbook," see Def. Ex. CC at 8 (Doc. No. 76-9), states that "[w]here the referring jurisdiction (PA Department of Corrections) has a grievance procedure, which they require the center to follow . .

---

[7] The Court notes that when a prisoner is transferred from one custodial institution to another, the grievance procedures of his former place of detention are not categorically "unavailable" to him within the meaning of the PLRA.  See George v. Hogan, 2008 U.S. Dist. LEXIS 25710, at *12 (M.D. Pa. Mar. 31, 2008) (collecting cases); Miller v. Schuylkill County Prison, 2007 U.S. Dist. LEXIS 96545, at *9 (M.D. Pa. Sept. 26, 2007) (citing Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) ("Many courts have held that the transfer of prisoner from the facility where the grievance arose to another facility does not excuse the prisoner from complying with the first facility's exhaustion requirement.") and Rodriguez v. Senkowski, 103 F. Supp. 2d 131, 134 (N.D.NY. Jun. 21, 2000)).

. [t]he center will follow the written grievance procedures established by the referring jurisdiction[,]" see id., the handbook also seems to provide an "informal process" of dispute resolution, whereby the resident is to attempt to resolve the problem with their counselor or case manager.  If the grievance cannot be resolved informally, the resident is then to obtain a "client request form" from the "Duty Desk," which is presumably located at ADAPPT House, and submit it to the Clinical Director or Group Home Supervisor.  If the grievance is still not resolved, the "client request form" is to be directed to the Director of Operations, who is to interview the resident and respond within 10 days.  See id.  This grievance procedure does not set forth any avenues by which a former resident currently residing at another facility might file a grievance against ADAPPT House.  Given the nature of ADAPPT House's grievance procedure, it is not self-evident to the Court that it is possible for an individual held at another facility to utilize such an informal procedure, which appears to rely heavily on face-to-face counseling and paperwork that appears to be available only at ADAPPT House.

Defendant has not shown the Court that, despite Plaintiff's transfer and the nature of ADAPPT House's grievance procedures, these procedures were available to Plaintiff within the meaning of the PLRA.  Accordingly, the Court declines to grant summary judgment to Defendants on the affirmative defense of exhaustion.

B.     STATUTE OF LIMITATIONS

Defendants assert that Ammouri is barred from asserting claims against Conely, Kama, and Hammond by the applicable two-year statute of limitations because he added these defendants to the lawsuit more than four years after the incident.  See Def. Mot. Summ. J. ¶ 16.

Pennsylvania's two-year statute of limitations for personal injuries is applicable here under § 1983.[8]  See 42 Pa. Cons. Stat. Ann. § 5524(7); Owens v. Okure, 488 U.S. 235, 249-50 (1989); Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003).

Fed. R. Civ. P. 15(c)(1) provides that an amended complaint adding parties to the litigation will "relate back" to the date of the original complaint if:

> (C) . . . Rule (c)(1)(B)[9] is satisfied and if, within the period provided by Rule 4(m)[10] for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Rule 15(c)(1)(C) has been interpreted to include a multi-factor test: (1) whether the claims arose out of the same conduct; (2) whether the parties to be added received timely notice of the action against them, as evidenced via the "shared attorney" or "identity of interest" tests; (3) the absence of prejudice to the added parties' defenses; and (4) whether, "but for a mistake" concerning the proper party's identity, the plaintiff would have included the added defendants in the action.  See Smith v. City of Phila., 363 F. Supp. 2d 795, 798-804 (E.D. Pa. 2005).

---

[8] Defendants assert that the statute would have run on September 18, 2005.  See Def. Mem. in Supp. Mot. Summ. J. at 4.

[9] Rule 15(c)(1)(B) states that a pleading may relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

[10] Under Rule 4(m), service of the summons and complaint should be made upon defendants within **120 days** of the filing of the complaint.  Fed. R. Civ. P. 4(m).

Defendants do not contest the first factor (commonality). The Court finds that the remaining elements have been satisfied with regard to Defendants Conely and Kama, and that they may be added to this action. Defendant Hammond, however, did not receive proper notice of this action, and is thus dismissed.

The Court finds that there was sufficient notice to Defendants Conely and Kama that they might be joined as parties to this action. In the Third Circuit, notice may be actual or constructive. See Smith, 363 F. Supp. 2d at 799 (citing Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 195 (3d Cir. 2001)). Plaintiff does not claim actual notice to Defendants, and hence the Court will examine this issue within the rubric of constructive notice. Constructive notice may be given through the "shared attorney" method or the "identity of interest" method. See id. (citing Garvin, 354 F.3d at 222-23 and Singletary, 266 F. 3d at 196-97).

Under the "identity of interest" method, courts in the Third Circuit will impute notice to added defendants if "the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." Id. at 801 (citing Garvin, 354 F. 3d at 227). Notice to an employer does not serve as notice to a non-managerial employee under this doctrine. See id. (quoting Singletary, 266 F.3d at 200).

The parties' filings provide the Court with little guidance regarding the status of Conely, Kama, and Hammond's positions at ADAPPT House. However, the Complaint indicates that Conely is a "Group Home Coordinator," Kama is a "Group Home Supervisor," and Hammond is a "Specialist" at ADAPPT House. See Compl. ¶¶ 26, 30. These titles indicate that Conely and Kama occupy supervisory roles at ADAPPT House, and, therefore, the Court finds a sufficient

nexus of interest to impute notice to Conely and Kama for Rule 15(c)(1)(C) purposes.[11]

However, there is no indication that Hammond occupies a supervisory role at ADAPPT House. Therefore, the Court does not impute notice to him through the "identity of interest" method.

Under the "shared attorney" method, the relevant inquiry is whether "the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, *within the 120 day period[12], had some communication or relationship with, and thus gave notice of the action to, the newly named defendant*." Smith, 363 F. Supp. 2d at 799 (citing Garvin, 354 F.2d at 225 (emphasis in original) (quoting Singletary, 266 F.3d at 196-97)).

It is uncontested that, at present, all Defendants share the same attorney. However, there is absolutely no indication in the record that ADAPPT House and Tillman's attorney communicated with Conely, Kama, or Hammond regarding this case on or before December 7, 2005, and Plaintiff has not come forward with any evidence that gives rise to the inference that ADAPPT House and Tillman's attorney communicated regarding this case within 120 days of the filing of the Complaint. See Smith, 363 F. Supp. 2d at 800-801 (noting that the plaintiff must

---

[11] In support of their argument that they do not share a sufficient nexus of interest with ADAPPT House to impute notice, Defendants cite Singletary v. Pa. Dept. of Corr., 266 F.3d 186 (3d Cir. 2001), see Def. Mem. at 9 (Doc. No. 75), in which the plaintiff sought to add a staff psychologist as a defendant in her suit against the Department of Corrections ("DOC"). The Third Circuit found that the defendant had an insufficient nexus of interest with the DOC under the "identity of interest" method because the defendant did not have "administrative or supervisory duties" at the prison. Singletary, 266 F.3d at 199. The Court distinguishes this case from Singletary because Conely and Kama's titles suggest supervisory or administrative duties at ADAPPT House; therefore, the Court finds a sufficient nexus of interest with regard to these two defendants. See Smith, 363 F. Supp. 2d at 801.

[12] The 120-day period under Rule 4(m) is calculated from the formal filing date of the complaint. Fed. R. Civ. P. 4(m). In this case, the complaint was filed on August 10, 2005; therefore, the 120-day period ended on or about December 7, 2005.

come forward with evidence of "some communication or relationship" between the shared attorney and the newly added defendant within the 120-day period) (quoting Garvin, 354 F.3d at 225-26). In fact, the first time an attorney entered her appearance on behalf of Conely, Kama, and Hammond was on January 28, 2008, well after the 120-day period expired. See Doc. No. 63.

In light of this record, the Court does not find sufficient notice to Hammond either through the "identity of interest" or the "shared attorney" methods to satisfy Rule 15(c)(1)(C). Hence, the Court dismisses Hammond from this suit without prejudice to Plaintiff, should he come forward with evidence of either pre-120-day communications between Hammond and his present attorney, or evidence showing that Hammond's position as a "Specialist" at ADAPPT House is indeed supervisory.

With regard to each added Defendant (Conely, Kama, and Hammond), the Court finds that factors (3) (absence of prejudice) and (4) (mistake) are satisfied. Plaintiff merely adds Conely, Kama, and Hammond to two of the counts already asserted against Defendant Tillman (excessive force and civil conspiracy). Because Tillman's defense will likely be nearly identical to the added Defendants', prejudice from relation back is unlikely to occur.[13] Defendants argue that Plaintiff cannot satisfy the fourth factor of the test because he knew the names of Conely and Kama because they testified against him at his criminal trial (where he cross-examined them), and that he subpoenaed Hammond, and thus could have made no mistake with regard to their identity. See Def. Mem. In Supp. Mot. Summ. J. at 4-8. However, the Court finds that

---

[13] In Smith, Judge Brody held that because the plaintiff's claims remained essentially unchanged from the original complaint, and because all defendants shared an attorney, there was no prejudice to the newly added defendants because the added defendants had access to the same evidence and defenses as the original defendants. See 363 F. Supp. 2d at 802. This Court finds the present case to be substantially similar to Smith with regard to absence of prejudice.

Plaintiff's "mistake" was merely his failure to name Defendants Conely, Kama, and Hammond in his original complaint, an understandable legal error given his pro se status. See Advanced Power Sys., Inc. v. High-Tech Sys., Inc., 801 F. Supp. 1450, 1457 (E.D. Pa. 1992) ("The mistake condition does not isolate a specific type or form of error in identifying parties, but rather is concerned fundamentally with the new party's awareness that failure to join it was error rather than deliberate strategy.") (Pollak, J.); see also Kinnally v. Bell of Pa., 748 F. Supp. 1136, 1142 (E.D. Pa. 1990) (permitting a pro se plaintiff's amended complaint naming additional parties who could have been named in the original complaint to relate back, because plaintiff's mistake was due to legal ignorance) (Pollak, J.). Therefore, Plaintiff's claims against Conely and Kama properly relate back to his original complaint under Rule 15(c)(1)(C).

**C.    CIVIL CONSPIRACY**

Defendants argue that because Plaintiff has not presented any evidence of a plan or "meeting of the minds" amongst Defendants to harm Plaintiff, they are entitled to summary judgment on Plaintiff's civil conspiracy claim. See Def. Mem. of Law in Supp. Mot. Summ. J. at 10-12. "[T]he existence or nonexistence of a conspiracy is essentially a fact question that the jury, not the trial judge, should decide." Victory Outreach Ctr. v. Melso, 371 F. Supp. 2d 642, 647 (E.D. Pa. 2004) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 150, 176 (1970)). Summary judgment on this claim would be improper. In this case, the existence of a conspiracy is essentially a factual issue for the jury, to be decided based on the conflicting accounts offered

by Ammouri and the individually-named Defendants.[14]  Hence, summary judgment on Plaintiff's civil conspiracy is denied.

### D. EXCESSIVE FORCE, FALSE IMPRISONMENT, FALSE ARREST, AND MALICIOUS PROSECUTION

Plaintiff asserts claims against the individually-named Defendants for excessive force under the Eighth Amendment and false arrest, false imprisonment, and malicious prosecution under both the Fourth Amendment and state tort law.  See Compl. (Counts I, III, IV, VII - IX).

"Following conviction, the Eighth Amendment 'serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified.'" Wesley v. Hollis, 2007 U.S. Dist. LEXIS 41562, at *25 (E.D. Pa. Jun. 7, 2007) (quoting Brooks v. Kyler, 2004 F.3d 102, 106 (3d Cir. 2000)).  The pertinent question in a claim of excessive force is whether the prison official applied force "in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. (quoting Smith v. Messinger, 293 F.3d 641, 649 (3d Cir. 2002)).  In order to make this determination, courts must consider: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response."  Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

---

[14] Civil conspiracy may also be proven by circumstantial evidence.  Victory Outreach Ctr., 371 F. Supp. 2d at 647.

"Where the defendants' actions are contested, as they are here [by Plaintiff's testimony], the Court cannot determine [how much force was used]," Wesley, 2007 U.S. Dist. LEXIS, at *33; hence, there is insufficient evidence regarding the extent of the force used by Defendants to support summary judgment. See id. Summary judgment is thus denied on Plaintiff's claim of excessive force.

In order to establish false arrest, a plaintiff must show that he was arrested without probable cause, regardless of whether the arresting officer was acting maliciously or out of bad faith. Baker v. McCollan, 443 U.S. 137, 143-44 (1979); see also Hill v. Oberdorf, 1987 U.S. Dist. LEXIS 7294, *8-9 (M.D. Pa. Jul. 16, 1987). False imprisonment requires a plaintiff to demonstrate that he was unlawfully detained by another person. See Ammouri, 2006 U.S. Dist. LEXIS 30278 (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). In order to establish a claim for malicious prosecution, a plaintiff must prove all of the following elements: (1) defendant initiated charges against him; (2) without probable cause; (3) out of malice or for a purpose other than bringing plaintiff to justice; (4) plaintiff was ultimately acquitted of all charges. Hill, 1987 U.S. Dist. LEXIS, *8-9. False arrest, false imprisonment, and malicious prosecution are the only claims for relief available under the common law "that could apply to a wrongful arrest and its consequences." Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000).

Defendants argue that Ammouri cannot make out a claim for false arrest against Tillman because Tillman was not the arresting officer; rather, Ammouri claims that Tillman lied to Officer Robinson[15], the arresting officer, which caused Ammouri to be falsely arrested. See

---

[15] Officer Robinson was dismissed as a defendant in this matter. See Doc. No. 35.

Compl. ¶¶ 86-90.  However, a private citizen may be held liable for false arrest under § 1983 if he or she caused the plaintiff to be arrested by virtue of false statements he or she made to the police.  <u>Doby v. DeCrescenzo</u>, 1996 U.S. Dist. LEXIS 13175, *40 (E.D. Pa. Sept. 9, 1996).  Hence, Plaintiff makes a valid claim of false arrest against Tillman.

Outstanding issues of material fact exist regarding each of Plaintiff's claims under the Fourth and Eighth Amendments and state tort law.  Because the facts material to a finding on each of the afore-mentioned claims must be determined by weighing the conflicting accounts of Plaintiff and Defendants regarding the events of September 18, 2003, summary judgment would be inappropriate at this stage of the litigation, <u>see, e.g.</u>, <u>Abraham v. Raso</u>, 183 F.3d 279 (3d Cir. 1999), and is denied with respect to Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution.

**E.    QUALIFIED IMMUNITY**

The individually-named Defendants in this action assert qualified immunity from Plaintiff's claims of excessive force, false arrest, false imprisonment, and malicious prosecution.  Qualified immunity is an "objective question to be decided by the court as a matter of law." <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 242 (3d Cir. 2004).  The defendant bears the burden of establishing qualified immunity.  <u>Campbell v. Moore</u>, 92 Fed. Appx. 29 (3d Cir. 2004).  A court should rule on qualified immunity as early as possible in § 1983 proceedings because qualified immunity is not a defense to liability, but rather immunity from the expense and burden of the lawsuit itself.  See <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

An analysis of qualified immunity requires a court to undertake the following

considerations: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show a constitutional violation, Saucier, 533 U.S. at 201, and, if so, (2) whether the constitutional right violated was clearly established at the time of the violation. Id.

Where there are outstanding issues of fact regarding whether a constitutional violation took place, it is premature for the court to grant summary judgment regarding qualified immunity. See Brockington v. City of Phila., 354 F. Supp 2d 563, 567-68 (E.D. Pa. 2005) (citing Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir. 2002) ("Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.' A decision as to qualified immunity is 'premature where there are unresolved disputes of historical facts relevant to the immunity analysis.'"). Because there are outstanding factual disputes regarding all of Plaintiff's constitutional claims against the individually-named Defendants, granting summary judgment on qualified immunity would be premature, and summary judgment is therefore denied with respect to qualified immunity.

### F.   FAILURE TO TRAIN

Under Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978), a municipality may be liable under § 1983 for the inadequate training of its employees. City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is

actionable under § 1983." <u>Canton</u>, 489 U.S. at 379.  Furthermore, the failure to train must be closely related to the ultimate injury.  <u>Id.</u> at 391.

Plaintiff's filings indicate that he claims that because Defendants allegedly brutally attacked him despite their alleged training regarding the use of force evidences inadequate training by ADAPPT House to which § 1983 liability attaches.  <u>See</u> Pl. Opp. at 21 (citing <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307-08 (10th Cir. 1998) ("[D]eliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's actions.") (internal quotations omitted).  Because Plaintiff claims that a "failure to train" is self-evident as a result of the alleged incident, it is clear that the success of his claim rests on a jury's determination regarding the existence and nature of the underlying alleged assault; therefore, summary judgment would be premature, and is denied.

### G.     CONCLUSION

Because the Court finds that Defendants have not proven the affirmative defense of failure to exhaust administrative remedies under the PLRA, and because unresolved issues of material fact exist regarding each of Plaintiff's claims under § 1983, summary judgment is denied on all claims (except intentional infliction of emotional distress, on which summary judgment is granted).  Because material factual disputes exist regarding whether a constitutional violation occurred, the Court cannot grant summary judgment on the issue of qualified immunity at this time.  With the exception of Hammond, all Defendants are properly added under Rule 15(c)(1)(C).  Defendant Hammond is accordingly dismissed from this action.

My Order follows.